UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 20-50083 |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS |
| vs. | |
| LUCIAN CELESTINE, | |
| Defendant. | |

_____

This Memorandum of Law is offered in support of Defendant Lucian Celestine's Motion

to Suppress Evidence and Statements, pursuant to Local Rule 7.2 of the United States District

Court for the District of South Dakota.

### STATEMENT OF FACTS

1.    An Indictment was filed against Defendant on September 17, 2020, charging

Defendant with Threats Against the President and Possession of a Firearm by a

Prohibited Person in violation of 18 U.S.C. § 871; 18 U.S.C. §§ 922(g)(4) and

924(a)(2), Counts I and II respectively.

2.    On or about June 29, 2020, Special Agent Randal Flint was advised that the

Defendant attempted to purchase a firearm through the website ARMLIST. It is

alleged that the Defendant wanted to have the weapon by June 26, 2020.

Defendant had multiple conversations with the seller and never mentioned the

POTUS or his pending visit to Rapid City. On June 27, 2020, the Defendant

contacted the seller stating he decided to get something that he didn't have to

travel so far for and wouldn't have to send money through the mail. On or about June 29, 2020, Special Agent Randal Flint and Special Agent George Abbruscato, reviewed the Defendant's social media accounts and did not find any negative references to POTUS nor his upcoming visit to Rapid City.

2.    On June 30, 2020, Pennington County Sheriff's Deputy Jeremy Milstead met with Special Agent Randal Flint and Special Agent George Abbruscato. They discussed the Defendant's calls to the FBI's NTOC and PIOC divisions.[1] On September 1, 2019, the Defendant called the FBI's NTOC division self reporting he heard the voice of God telling him to kill people and that President Trump was a rapist and he had an urge to kill rapists. The Defendant report that he did not have the means or desire to harm anyone. On November 14, 2019, the Defendant called the FBI's PIOC division self reporting he had strong urges to kill rapists, and he heard voices telling him President Trump raped his aunt.[2] The Defendant stated that he had not taken any steps to meet the voices demands nor had he purchased a weapon or planned to travel.

3.    On June 30, 2020, Pennington County Sheriff's Deputy Jeremy Milstead, Special Agent Randal Flint, and Special Agent George Abbruscato met with the Defendant outside of his home. PCSD Milstead was in full uniform and equipped

---

[1] The reports provided do not give a clear indication of what PIOC and NTOC stands for.

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 2

with body camera. SSAs Flint and Abbruscato where dressed in plain clothes and armed with their services weapons and handcuffs.

4.    None of the law enforcement agents informed the Defendant that he did not have to speak with them prior to asking any questions. None of the law enforcement agents told the Defendant he was free to end the encounter if he so desired. None of the law enforcement agency informed the Defendant that he could be arrested depending on his answers to their questions.

5.    The interrogation occurred with Defendant standing, back to his garage, the SSAs flanking him as PCSD Milstead stood directly in front of the Defendant. Agent Flint reminds the Defendant that he has been interviewed by the Secret Service previously and the context of the prior interview. Agent Flint inquires if the Defendant was of the personal opinion that rapist should be shot. Agent Flint asks the Defendant if he has any guns or has access to any guns. Agent Abbruscato asked if the Defendant had a gun on his person as they spoke. Agent Flint told the Defendant that he had a consent form for him to sign that would allow the search of his car and his home. The Defendant was not given an opportunity to read the consent form prior to signing it. The Defendant was not asked if he understood what the form meant before he signed it. Prior to signing the consent to search form both Agent Abbruscato and PCSD Milstead instructed the Defendant to keep his hands out of his pockets while they are talking. The agents searched the trunk

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 3

of the Defendant's vehicle recovering the firearm that form the basis of Count II of the indictment.

6.   The agents then searched the Defendant's home after which he was placed in handcuffs and taken to the Pennington County Public Safety building and placed in an interview room with PCSD Jesse Kubik. PCSD Milstead continued his prior investigation of the Defendant while PCSD Kubik talked to the Defendant about why he was there. During this time PCSD Milstead confirmed that the Defendant had been placed on an involuntary mental health hold previously and had a history of wanting to harm others. PCSD Milstead reported not being able to find state level charges to hold the Defendant but that federal charges where being considered and as result the Defendant was being placed on a mental health hold given the totality of the circumstances.

7.   Armed with this confirmed information PCSD Milstead entered the interview room an initiated a "conversation" with the Defendant. PCSD Kubik remained in the interview room. The Defendant was not released from the handcuffs, informed of his *Miranda* rights, or that he was free to leave without speaking. PCSD Milstead brought up the Defendant's prior contacts with the FBI, the voices in the defendants's head and what they told him to do. During this "conversation" the defendant made statements that form the basis of Count I of the indictment. After the Defendant made those statements, he was *Mirandized* and interrogated a

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 4

third time making further statements that are the subject of this motion. PCSD ultimately charged the Defendant with making Terroristic Threats under South Dakota Codified Law 22-8-13.

8.    The Defendant asserts that his statements and consent to search were not voluntary. In particular, the Defendant asserts that he was illegally seized and questioned without the benefit of Miranda when questioned outside of his home. Further, the Defendant asserts that his consent was the product of duress, coercion both express and implied, with law enforcement's knowledge that the Defendant had been involuntarily placed on a mental health hold and that he heard voices encouraging him to commit certain acts. As such the Defendant moves to suppress the firearm recovered.

9.    The Defendant moves to suppress the statements given at his home and the Public Safety facility to PCSD Kibuk and Milstead while handcuffed in a witness interrogation room as obtained without the benefit of *Miranda*.

10.   The Defendant also moves to suppress the statement given after he was read his *Miranda* Rights as fruit of aforementioned illegalities.

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 5

## ARGUMENT AND AUTHORITIES

I.    Suppression of Statements.

    A.    Statements to Law Enforcement.

        1.    Involuntary Statement outside of his home.

The Defendant asserts that his statement to SSAs Flint and Abbruscato outside of his home was not voluntary on the basis that his will was overborne, and he was impermissibly coerced into giving the statement. Statements that are not the product of a rational intellect and free will must be suppressed. Mincey v. Arizona, 437 U.S. 385 (1978). In determining the voluntariness of the statement, the Court must consider the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 225-6, 93 S. Ct. 2041 (1973). The "totality of the circumstances approach requires the reviewing court to consider the specific tactics utilized by the police in eliciting the admissions, the details of the interrogation, and the characteristics of the accused in order to determine if there has been a violation of due process. Rachlin v. United States, 723 F.2d 1373, 1377 (8th Cir. 1983). A statement is involuntary if it was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence. Hutto v. Ross, 429 U.S. 28, 30 (1976); Bram v. United States, 168 U.S. 532, 542-43 (1897). The government has the burden of proving the statement was voluntary by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157 (1986). Involuntary statements are not admissible for any purpose, including impeachment. Mincey V. Arizona, 437 U.S. 385 (1978). The Due Process Clause of the Fifth Amendment to the United States Constitution and Miranda v. Arizona, 384 U.S. 436 (1966), require a statement

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
   Support of Motion to Suppress
October 6, 2020
Page 6

to be voluntary. The Defendant asserts that because his statement was not voluntary, it must be suppressed.

Of important significance is the fact that the Defendant had been previously committed to a mental health hold. As stated in Schneckloth v. Bustamonte, 412 U.S. 218, 225-6, 93 S. Ct. 2041 (1973), the characteristics of the Defendant is a factor to be taken into account. Such characteristics include the youth of the accused and the level of education or intelligence. *See also*, Arizona v. Fulminate, 499 U.S. 279, 286 n.2 (1991). An accused, like the Defendant, laboring with an active mental health diagnosis is more likely to be susceptible to undue influence than others. The fear of prison, coupled with the reminder of his previous question by the FBI, overbore his will and his statement to the agents was involuntary.

2. Illegal Search.

Based on the arguments set forth above, the illegal seizure of the Defendant resulted in the officers searching Defendant's vehicle. First, the defense asserts his seizure was illegal and the firearm obtained from his vehicle is the fruit of the illegal detention, unmirandized statements, and must be suppressed.

Second, the defense asserts that Defendant's consent to the search of the vehicle was involuntary and the product of police badgering. The government has the burden to establish that consent was freely and voluntarily given and not the result of duress or coercion. *Laing v. United States*, 891 F.2d 683, 686 (8th Cir. 1989). A showing of mere acquiescence to a claim of

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
   Support of Motion to Suppress
October 6, 2020
Page 7

lawful authority will not discharge this burden. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968).

Of the factors this court can consider in determining if consent was freely and voluntarily given, this court can consider the officer's allegation that Defendant was under the influence of drugs, and that *Miranda* was not advised until after the consent was allegedly given. *United States v. Lee*, 356 F.3d 831, 834 (8th Cir. 2003). The court is to also consider the environment in which the alleged consent was secured, such as the fact that Defendant was in police custody, handcuffed, and in the police car and had been detained for a period of time. United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001).

Third, under *Arizona v. Gant*, 129 S. Ct. 1710 (2009), the police were not justified in search the vehicle as a search incident to arrest, since Defendant had not expressed any desire to harm POTUS when asked directly by the agents while being questioned outside of his home.

B.   Statements to PCSD Kibuk and Milstead.

According to the investigative reports, the Defendant was taken to Pennington County Public Safety Facility and placed in an interrogation room while handcuffed. PCSD Kibuk began talking with the Defendant about why he was detained. PCSD returned to the interrogation room and joined the conversation. During this conversation PCSD asked the Defendant whether he wanted to harm the POTUS. The Defendant's *unmirandized* response to that question forms the basis of Count I of the indictment. PCSD Milstead then read the Defendant his *Miranda* rights and had him repeat what he said in the previously *unmirandized* interrogation.

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
  Support of Motion to Suppress
October 6, 2020
Page 8

The Defendant asserts that statements must be suppressed on the grounds that it was (1) not voluntary, and (2) violated the Defendant's rights under *Miranda*, based on the arguments set forth in the preceding paragraphs. The questioning and statements allegedly made by the Defendant were an extension of the interrogation he previously was subjected to by the federal agents. Therefore, the alleged statements fall under the same scrutiny as the previous statement and should be suppressed as being involuntary and in violation of *Miranda*.

II.    Suppression of Evidence.

The investigative reports contain a permission to search form and an authorization for treatment, examination, collection, and release of evidence and information. Both documents were signed by the Defendant on June 30, 2020. The Defendant asserts that he did not voluntarily consent to such search, collection, and release of evidence. This argument is made on the grounds that an involuntary consent based on the conduct and statements by law enforcement during the initial interrogation overbore the Defendant's will to the point that he consented to the search of his vehicle and home and admitted to the allegations regarding Count II of the indictment.

The test to be applied to the voluntariness of a search is the "totality of the circumstances" under Schneckloth v. Bustamonte, 412 U.S. 218, 225-6, 93 S. Ct. 2041 (1973). In United States v. Hathcock, 103 F.3d 715 (8th Cir. 1997), the Eighth Circuit Court of Appeals set forth individual characteristics that aid in the determining whether consent was voluntary, including age, general intelligence, whether the individual was informed of *Miranda* rights, and whether

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 9

the individual had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals. Id. at 719. The Court also looked at the environment in which the individual gave consent and, among other factors, considered the period of time the individual was detained or questioned, whether the police threatened, physically intimidated, or punished the individual, whether the police made promises or misrepresentations upon which the individual relied, and whether the individual was in custody or under arrest at the time consent was given. Id. In the instant case, and as previously argued regarding the voluntariness of his statements, the Defendant was laboring with a mental health diagnosis. He was detained, did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. The statements made and actions of law enforcement overbore the Defendant's will, causing him to sign the release forms, making any "consent" not voluntary.

CONCLUSION

The conduct and statements of law enforcement which initially led to the Defendant involuntarily agreeing to a search of his car and home as well as admitting to the accusations that for the basis for Count II of the indictment is the first basis for suppressing the later consent to search and permission for release of evidence. The same argument previously made for suppressing the statements as involuntary applies to finding his consent as involuntary, for the consent to search stems from the same threat and promise that made his decision to speak to law enforcement involuntary.

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 10

In that the Defendant did not voluntarily consent to the taking of evidence, the taking of such evidence violates his rights under the Fourth Amendment to the United States Constitution and must be suppressed under the Exclusionary Rule of the Fourth Amendment and Mapp v. Ohio, 367 U.S. 643 (1961). The Defendant moves the Court to suppress any all evidence taken from him, including but the firearm and all statements made to law enforcement on June 30, 2020.

The Defendant also asserts that all evidence and statements obtained as the result of an unreasonable search and seizure are inadmissible under the "fruit of the poisonous tree" doctrine set out in *Wong Sun v. United States*, 371 U.S. 471 (1963). But for the illegal seizure and question of Defendant, law enforcement officers would not have had any reason to search his vehicle or question him further at the Public Safety Facility. Under *Wong Sun*, statements by a defendant that flow from a Fourth Amendment violation must be suppressed. The administration of the *Miranda* warnings after the occurrence of the Fourth Amendment illegality does not, alone, purge the taint of the Fourth Amendment violation. Brown v. Illinois, 422 U.S. 590, 601 (1975).

WHEREFORE, Defendant moves this Court to suppress all evidence and statements seized from his vehicle on June 30, 2020, and the statements he made to law enforcement.

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 11

Dated this 6th day of October, 2020.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:
___/s/ Thomas E. Harmon V_____
Thomas E. Harmon V, Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
655 Omaha Street, Suite 100
Rapid City, South Dakota 57701
Telephone: 605-343-5110 Facsimile: 605-343-1488
Filinguser: SDND@fd.org

*U.S. v. Lucian Celestine*
CR 20-50083
Defendant's Memorandum of Law in
    Support of Motion to Suppress
October 6, 2020
Page 12